ORIGINAL



FILED
HARRISBURG, PA
JUL 3 1 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DORI L. BEARD<br>    Plaintiff | : NO.: 1:CV-01-0374<br>:<br>: |
| v. | : Judge Caldwell<br>: |
| PENNSYLVANIA STATE UNIVERSITY,<br>PENN STATE HARRISBURG, CAPITOL<br>COLLEGE, LEONARD J. SUPENSKI, and<br>DOROTHY GUY, in their individual capacity,<br>    Defendants | :<br>:<br>:<br>:<br>: JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR RECONSIDERATION**

**I.  INTRODUCTION**

With all due respect for the Court, the Memorandum Opinion in Support of it's Order granting Summary Judgment to Defendants leads Plaintiff to conclude that she was simply denied fair consideration of her claims. The Court appeared to wholly ignore the evidence favorable to Plaintiff as well as the reasonable inferences that Plaintiff argued based on that evidence. The Court also not only accepted Defendant's rendition of the evidence, over the pointed arguments of Plaintiff as to the credibility of some of that evidence, but the Court went on to specifically accuse Plaintiff of mischaracterizing and misrepresenting the evidence in several respects, including the misrepresentation of a direct quote from her own correspondence. In addition, the Court did not even acknowledge the precedent in this circuit cited by Plaintiff in her exhaustion of administrative remedies argument.

1

By seeking reconsideration, Plaintiff is not simply trying to change a bad result, although she strongly submits that the result would be changed as a matter of fact, logic and law if given proper consideration. This Court may well believe that the Plaintiff is not entitled to relief under the facts and circumstances in this case as any juror may be persuaded to believe, but as a jurist, this Court must strictly confine itself to the well defined role that it is to serve in the summary judgment context, and reconsideration is appropriate to correct what Plaintiff believes are manifest errors in the Court's service in that role in this case.

## II.  ARGUMENT

### A. Standard of Review

The Court's statement of the standard of review in it's Memorandum Opinion, itself suggests a predisposition towards granting summary judgment. The Court recites the principle that "facts and inferences must be viewed in a light most favorable to the moving party", but goes on to place particular emphasis on what the non-moving party "must" do in order to avoid summary judgment and when summary judgment should be granted. While the Court recognizes that the summary judgment record must be viewed in the light most favorable to the non-moving party, it does not appear to have paid particular heed to what that means. The Supreme Court has unequivocally stated that "the evidence of the non-moving party *is to be believed*, and *all justifiable inferences* are to be drawn in its favor." *Anderson v. Liberty Lobby, Inc.*, 477 US. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed.2d 202 (1986). The judge's function at the summary stage is not to weigh the evidence and determine the truth of the matter, but simply to determine whether there is a genuine issue for trial, and the non-moving parties' version of any disputed

fact must be presumed to be correct. *Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451, 456, 112 S. Ct. 2072, 2076, 119 L. Ed.2d 265 (1992).

Because the genuineness of a disputed issue of fact is determined by reference to the substantive law governing the case, Plaintiff has gleaned the following principles of general applicability in all contexts and with particular applicability to discrimination cases:

1. Under the Federal Rules of Civil Procedure a party is entitled to seek summary judgment in its favor on "all or any part" of the claims that have been made. Fed. R. Civ. P. 56(b). The courts are instructed that summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).

2. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), the Court articulated the familiar standard that:

> "the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

477 U.S. at 323, 106 S. Ct. at 2553.

3. A court may grant summary judgment "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in rule 56, is satisfied." Id..

4. Summary judgment has been characterized as "a drastic remedy," because it cuts off a party's rights to a jury trial; that is why courts must resolve any doubts as to the existence of a

genuine issue of material fact against the moving party. *Ness v.Marshall*, 660 F.2d 517, 519 (3d Cir. 1981).

5. The drastic nature of summary judgment supports the limitation of the court's function to determining whether issues of fact exist and not resolving issues of fact, even if a preponderance of the evidence supports the moving party's contentions concerning the "factually unsupported claims or defenses" that it wishes to "isolate and dispose of". *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2553.

6. The papers of the movant are to be carefully scrutinized while those of the non-movant should be indulgently received. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074 (1976).

7. The Court must disregard all evidence favorable to the moving party that a jury is not required to believe and should give credence to the evidence favoring the nonmovant and the unimpeached or uncontradicted evidence from disinterested witnesses supporting the moving party. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110 (2000).

8. As a further protection of the nonmoving party's right to trial, the courts must draw all inferences in favor of that party and are not to resolve any genuine credibility issues. *Ness*, 660 F.2d at 519.

9. Rule 56 clearly places the initial burden on the moving party to show initially how the evidentiary matter in support of the motion establishes the absence of a genuine issue concerning any material fact. Fed. R. Civ. P. 56, Advisory Committee Notes to 56(c). If the moving party does not meet the initial burden of establishing the absence of a genuine issue of material fact, summary judgment must be denied before the non-moving party's response even needs to be considered. Id..

10. If the moving party meets its initial burden of showing the evidentiary basis that establishes the absence of a genuine issue, the nonmoving party is required to go beyond the contrary allegations of their complaint and must come forward with evidence disputing the materials relied upon by the moving party to avoid conceding the fact at issue for purposes of summary judgment. *Adickes v. Kress & Co.*, 398 U.S. 144, 160-61, 90 S. Ct. 1598, 1610 (1970).

11. Because this is a discrimination case, this Court should have been mindful of the admonition that:

> "in today's climate of public opinion, blatant acts of discrimination – the true smoking guns – can easily be identified, quickly condemned and often rectified in the particular settings where they occur. Much of the discrimination that remains resists legal attack exactly because it is so difficult to prove. Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered. That is one of the reasons why our legal system permits discrimination plaintiffs to prove their cases by direct or circumstantial evidence."

*Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987) (citations omitted). Circumstantial proof typically includes unflattering testimony about the employer's history and practices, and discrimination may, at times, be capable of proof through evidence of the atmosphere and context in which the decisions were made. *Antol v. Perry*, 142 F.3d 639, 644 (3d Cir. 1998).

12. To survive summary judgment when the employer has articulated a legitimate nondiscriminatory reason for its action, there must be some direct or circumstantial evidence from which a finder of fact could reasonably disbelieve the employer's articulated reasons or believe that a discriminatory reason was more likely than not a motivating or determinative cause. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). If Plaintiff points to evidence that calls into question the true motivation behind Plaintiff's separation, the inference of an improper motive may be drawn, and it is for a jury to determine whether Defendant's improper motive

was unlawful as well. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993).

13. When, as in the present case, intent is an issue, the court must be cautious about granting summary judgment. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d. Cir. 2000).

14. Moreover, because issues of pretext often turn on credibility, summary judgment should not be granted when such issues arise because credibility determinations are for a jury. *See e.g. Jackson*, 826 F.2d at 236.

15. The character and quality of the evidence for which the plaintiff can show pretext varies under circumstances of the case. To defeat summary judgment, a plaintiff may not need to point to evidence other than that which establishes the prima facie case. *Simpson v. Kay Jewelers, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998). Of course, a plaintiff may also point to weaknesses, implausibilities, inconsistencies, incoherency's, or contradictions in the employer's proper legitimate reasons to create a reasonable inference of discrimination. *Fuentes*, 32 F.3d at 764. Courts have also considered noncompliance with internal policies, statements by supervisory-level employees, past treatment of the plaintiff and others, and the past opportunities provided to a complaining plaintiff relevant in pretext cases. *See e.g., Colgan v. Fisher Scientific Co.*, 935 F.2d 1407 (3d Cir. 1991) (en benc) (adherence to employer rules); *Wilson v. Susquehanna Township Police Dept.*, 55 F.3d 126 (3d Cir. 1995) (discriminatory statement of decisionmaker's supervisor); *Fuentes*, 32 F.3d 759 (past discrimination and less favorable treatment); and *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 98 F.3d 309 (3d Cir. 1993) (opportunities given employee).

### B. Application of the Standard in This Case

#### 1. Exhaustion of remedies

The initial justification for the Court dismissing Plaintiff's seniority and failure to reinstate claims was that she did not exhaust her administrative remedies because she failed to file timely administrative complaints of discrimination. The most glaring deficiency in the Court's Memorandum is the fact that the Court did not even recognize Plaintiff's argument, supported by Third Circuit precedent and specific factual reference, that her administrative remedies had properly been exhausted. In fact, and again despite an extensive direct quote from the applicable binding authority that concisely frames the legal theory being argued, the Court, in its Memorandum, states that *"presumably she is attempting to argue* that her failure to reinstate claim" is timely because she alleged a continuing failure to reinstate from October 15, 1997 to August 30, 1999. Plaintiff's Brief left nothing to conjecture, and this Court's treatment of this issue is confounding. It is also incorrect in concluding that "Plaintiff has not pointed to a specific time when Defendants allegedly failed to reinstate her, other than October 15, 1997". These statement of facts in Plaintiff's Brief specifically quoted a January 7, 1998, letter from her counsel "Penn State's unwillingness to return her to employment in any capacity" as well as Plaintiff's Declaration that she requested, through her Counsel, to be returned several times after October 15, 1997, but was not returned.[1]

The Court did then take the time to point out that Plaintiff "failed to recognize" the argument admitted by Defendants. Initially, Plaintiff very clearly recognized Defendant's argument as an "exhaustion of remedies" argument which, like the ninety (90) day period within

---

[1]To the extent the Court believes that Plaintiff's Declaration is insufficient because of her lack of specificity, Plaintiff notes that Defendants did not direct any discovery to the issue of the failure to return Plaintiff to her position, implicitly acknowledging their awareness of her repeated requests.

7

which filing in court must occur after the issuance of a Notice of Right to Sue, is treated *like* a statute of limitations. Plaintiff made certain to address both issues, but the Court only chose to focus on the one that is relatively insignificant and characterized the other one as something that it was not in order to justify its action.

Plaintiff's Response to Defendants' Statement of Material Facts and her Declaration clearly set forth the factual basis for her exhaustion of remedies arguments, and her Brief cited the legal authorities that supported her contentions, and this Court completely bypassed the evidence and the law in granting summary judgment to Defendants on this issue.

### 2. The Merits of Plaintiff's Claims

Of course, after ruling that much of Plaintiff's case must be dismissed because she did not follow proper procedures, the Court went on to articulate how that, even if she did know what she was doing, her claims would be dismissed anyway because she had a bad case. The Court's disposition of Plaintiff's disparate treatment, hostile work environment, retaliation, and American's with Disabilities Act claims was largely marked by the Court's errors in review of the record and consideration of the evidence and inferences, and Plaintiff will simply proceed to address the most significant deficiencies in the order in which they arise.

In the denial of seniority claim, the Court chastised Plaintiff for placing an argument in a footnote, but conceded that Plaintiff may be able to establish prima facie case.[2] Then the Court noted that Defendants "satisfied their *light-burden*" of articulating a legitimate, non-

---

[2] Plaintiff submits that Defendants' argument that she could not point to the disparate treatment of similarly situated male employees when she was the only female in the department is so absurd as its consideration in a footnote was, at most, all the argument to which it was entitled. Moreover, the issue in a disparate treatment case is whether the action was taken "because of" a protected trait and, while dissimilar treatment of non-protected employees may be relevant, it is clearly not required as an element of a discrimination claim in all cases.

8

discriminatory reason for the action taken. The discussion of that issue ends with the Court's recitation of the justification given, but there is no discussion as to the issue of pretext. *See* Memorandum Opinion, pp. 21-22. With regard to the issue of pretext, Plaintiff cited evidence that Supenski's "first priority" was to deal with the "great deal of contention" in the department caused by Plaintiff's past sexual harassment complaints. Then, after the last male with any seniority left his employment, Supenski immediately set out to change the seniority rules despite his specific acknowledgment that the seniority rules would continue to be adhered to the previous year. In viewing these facts in the light most favorable to Plaintiff, Plaintiff does not believe it is unreasonable to infer that Supenski's credibility is called into question by his conflicting justifications and, at the very least, there is some recognizable dispute as to what the true motivations for his actions were.

In the failure to reinstate arguments, the Court notes that Defendants' failure to make any showing on the factual issues involved in this claim was sufficient to meets their burden because all they had to do was say so, then suggests that Plaintiff failed to oppose Defendants' arguments and has failed to satisfy her burden of showing that the reasons advanced by Defendants are pretextual and, as such, her claim must be dismissed.

Plaintiff pointed out that "Defendants had not even attempted to articulate a legitimate, non-discriminatory reason for failing and refusing to return Plaintiff to her position . . . .." Although, the Court apparently credits Defendant with the justification that she needed to be released to return on an unrestricted basis by two physicians, that justification was never given by any individual, agent and/or employee of Penn State either before this litigation or during discovery as a reason for failing and refusing to return Plaintiff to her position, and was only argued by Defendants' Counsel in their Summary Judgment Motion as a response to the

9

Plaintiff's argument that there was no reason she should not have been returned to work. The fact that an assertion is made for the first time in a legal argument on a motion for summary judgment should alone be sufficient to support a finding of pretext. Defendant did not put forth a shred a evidence that such was actually the case at the relevant time, as would have been indicated had they responded to Plaintiff's assertion of its "unwillingness to return her to employment" in January of 1998 or at any time thereafter. Moreover, the basis of that justification, by its own terms, only related to the suspension of her police powers and, inasmuch as Supenski himself was not a certified law enforcement officer, there is no indication that Plaintiff not having her credentials meant that she could not be employed by Defendant. Finally, the Court simply ignored the clear testimony from the Manager of Employee Relations that the position to which Plaintiff sought to be returned "was her position" until her termination, which still had not been effected as of November 18, 1999.

Plaintiff repeatedly addressed Defendants' clearly and demonstrably pretextual arguments concerning these matters in her Brief and her Response to Defendants' Statement of Material Facts, and this Court clearly and demonstrably erred and exceeded its role in granting summary judgment in favor of Defendants. These errors affected both the failure to reinstate and termination claims.

With more specific respect to Plaintiff's termination claim, the Court recognized that Plaintiff made "several arguments", but felt that "only one . . . require[d] discussion" and, of course, went on to reject that argument. The Court simply rehashed the same "consensus of opinion" argument that had been used to quash her failure to reinstate claims, and the arguments that the Court felt unimportant to address were: 1) that the justification offered by Defendants as to the expiration of Plaintiff's leave was not worthy of credence because she was not on

10

"medical" leave, and 2) that none of the pretextual justifications offered by Defendants can logically be squared with the Human Relations Manager's testimony that "her position was her position" until she was terminated. The reason that these arguments, either of which standing alone would undercut the basis of Defendants' Motion, were not worthy of this Court's consideration escapes Plaintiff unless the reason they were not considered is because they would have undercut the basis of Defendants' Motion. When these arguments, and their factual bases, are properly considered, together with Defendants' flat fabrication that Plaintiff's August 24, 1999 letter and their August 30, 1999 letter "crossed in the mail", there is no logical way that this Court could have found Defendants' entitled to judgment as a matter of law.

The foregoing errors pervaded the Court's analysis of Plaintiff's retaliation arguments as well, and Plaintiff will not rehash the Court's manifest errors in those regards here; however, the analysis is reflective of this Court's failure to adhere to the standard of review in three specific respects which warrant discussion. First, the Court states that Plaintiff did not point to any evidence concerning Defendants' failure to reinstate her other than October 15, 1997. This assertion is contradicted by the January 7, 1998 letter from her attorney as well as her declaration that, through her attorney, she requested to be returned to her position "several times" after October 15, 1997, but was never returned. Clearly, the Court disregarded evidence favorable to Plaintiff.

Next, the Court considered evidence in the light most favorable to Defendants, and specifically resolved a factual dispute in its evaluation of the testimony of Kevin Stoehr that her protected activities were a factor in the decision to refuse to return her to her position. The only "context" relevant to this Court's decision is the summary judgment context wherein Stoehr's

11

testimony, together with its reasonable derivative inferences, when viewed in the light most favorable to Plaintiff, creates an issue of material fact concerning Defendants' retaliatory motive.

In addition, the Court accused Plaintiff of mischaracterizing her own correspondence, clearly not construing that evidence in the light most favorable to her, and accepted the Defendants' ludicrous assertion (which Plaintiff has documented to be false) that the August 24 and 30 letters crossed in the mail in further rejecting her retaliation claim. When considering the facts that 1) "her position was her position" until she was terminated, 2) she requested to be returned to that position, 3) her litigation was a factor in the decision not to return her to her position, 4) she was terminated after she requested to return to the position that "was her position" before she was terminated, 5) the letters did not "cross in the mail", and 6) as of November 18, 1999 she was still employed by Penn State, it escapes comprehension how this Court could have determined that there were no disputed issues of material fact relative to her retaliation claim.

Again, Plaintiff provided more than ample evidence to meet Defendants' unsupported recitation that Plaintiff could not establish a causal link between her protected activities and her termination and/or non-reinstatement, and this Court completely disregarded the applicable standard of review in finding otherwise. This Court must acknowledge its manifest errors in these regards and grant reconsideration of its July 9, 2002 Order and Opinion.

Finally, the Court again considered the evidence in the light most favorable to Defendants, failed to draw inferences favorable to Plaintiff, and resolved factual disputes in dispensing with Plaintiff's "regarded as" claim under the ADA. Whether Stoehr had direct decision-making authority with respect to Plaintiff is immaterial because he clearly would have been her immediate supervisor and clearly spoke as an agent for his employer on these issues

which clearly indicate the state of mind of the employer, and his testimony, to which Plaintiff did direct the Court, clearly supports an inference that Plaintiff was regarded as disabled because of her medical conditions and treatment.

### III. CONCLUSION

For all of the foregoing reasons, and the interest of fundamental fairness, Plaintiff respectfully requests that this Court enter an appropriate Order granting Plaintiff's Motion for Reconsideration.

Respectfully submitted,

Andrew J. Ostrowski, Esquire
I.D. No. 66420
4311 North Sixth Street
Harrisburg, PA 17110
(717) 221-9500

Dated: July 31, 2002

Attorney for Plaintiff

13

## CERTIFICATE OF SERVICE

I, Andrew J. Ostrowski, hereby certify that I have served a true and correct copy of the foregoing document by depositing such in the regular U.S. Mail, addressed as follows:

Jeanine C. Gismondi, Esquire
811 University Drive
State College, PA 16801-6699

Andrew J. Ostrowski
4311 North Sixth Street
Harrisburg, PA  17110
(717) 221-9500

Dated: July 31, 2002